Eliphalet Lyon, Executor of Thomas B. Stillman, Respondent, v. Samuel G. Mitchell, Appellant.

Grover, J. (dissenting).  In 1861 the defendant was president of a company owning and running a line of steamers from New York to Savannah.  Being desirous of selling the steamers, he gave the following contract to the intestate: "Whereas, I desire to sell the steamers Augusta, Alabama, Florida and Star of the South, now, in consideration thereof, and of one dollar to me in hand paid by Thomas B. Stillman of the city of New York, I do hereby constitute him, the said Stillman, my true and lawful agent or attorney to dispose of said steamers, or either of them, at such prices, and on such terms as may be hereafter agreed upon, and I do hereby agree to pay to said Stillman, his heirs or assigns, ten per cent of the total amount that said steamers, or either of them, may be sold for.  Dated May 9, 1861." The evidence as to the following questions was conflicting; but the verdict of the jury must, in this court, be regarded as determining the facts as follows: That the plaintiff after receiving the above contract from defendant went to Washington twice for the purpose of selling the ships to the government.  That he talked with the secretaries of war and of the navy upon the subject, recommended the ships to them and urged them to purchase, but obtained no offer from either, nor any information except that an agent would be appointed in New York to purchase for the government.  Sometime after, George Morgan was appointed agent for that purpose by the government, with instructions to purchase ships, and was to be paid a commission of two and one-half per cent by the vendors upon the amount of the purchases.  Morgan applied to the defendant and purchased from him three of the ships in question.  Evidence was given that plaintiff had some talk with Morgan about these ships, but he had nothing to do with negotiating the bargain for the sale with him.

The court, among other things, charged the jury, that the main question for the jury was, did Mr. Stillman's action in

the matter direct or draw the attention of the navy department or of Mr. Morgan to these steamers, as vessels that were offered for sale and lead to the negotiations that resulted in the purchase of the vessels? To this portion of the charge defendant's counsel excepted, and requested the court to charge that his action must have been the procuring cause of the sale. The court refused, and defendant's counsel excepted. The court had before charged that if plaintiff was entitled to recover he was so entitled to the full commission specified in the contract upon the amount paid by Morgan for the vessels. The jury found this amount for plaintiff, deducting therefrom the commissions of two and a half per cent paid Morgan. The defendant, after affirmance of the judgment by the General Term of the Superior Court of New York, appealed to this court.

A number of questions were discussed by the counsel for appellant which are not raised by any legitimate exception found in the case. At the close of the testimony the defendant's counsel presented some ten requests to the judge to charge particular propositions, some of which were proper and others improper, and at the close of the charge excepted thereto so far as it differed from the request. This exception raises no question of law whatever. It is too general, and it was impossible for the judge to determine the particular points of the charge that the counsel considered as erroneous and wished to have modified. This precise point was decided in *Chamberlin* v. *Pratt* (23 N. Y., 47), by this court. It has been repeatedly held that the party excepting to the charge must put his finger upon the point complained of, so that the judge and opposite party may readily understand it, or the exception is unavailing. This disposes of the point ably argued by counsel, that the contract between the parties contemplated, as shown by the proof, the use by the plaintiff of improper influences to induce the officers of government to purchase these ships, and that the contract was therefore illegal and void. No such question is raised by the exceptions in the case, and hence the court have none such to determine. The court did

not err in refusing to dismiss the complaint upon the ground that defendant did not own the vessels. He contracted in his own name, and personally agreed to pay the commission. It was lawful for him to do this if he chose, whether he owned the vessels or not. No evidence was given tending to discharge the obligation *prima facie* assumed by the defendant by his covenant.

The second ground for the motion was equally untenable. That was, that it was against public policy to restrict the power of sale of the vessels to one individual. To this it may be answered that the power of the owner to sell the vessels was not divested by the contract. Second, that if it was, such restriction would not be illegal. In the absence of any contract, the owner alone could sell, and it is perfectly legal for him to contract that another shall have this power exclusive of all others. The important question arises upon that portion of the charge specifically excepted to. That presents the question whether Stillman entitled himself to the commission specified in the contract by directing the attention of the navy department or Morgan to the steamers as vessels offered for sale, and led to the negotiations which resulted in the contract, the charge holding that these facts did so entitle him. In this, I think the learned judge erred. The fair construction of the contract is, that Stillman was not only to direct attention to the vessels as being for sale, and thereby cause negotiations between others that led to a sale, but that he was himself to negotiate a sale of the vessels at prices thereafter to be agreed upon between him and the defendant. That he was to do all this as the consideration of his commission. That he was to render all the services necessary to be rendered by the vendor in the examination of the vessels, and furnish the purchaser with all requisite information as to the condition and quality of the vessels, and devote his time and skill in negotiating as advantageous a bargain as practicable. Where agents are employed to transact important business, for which they are to receive large compensation, it is the skill of the agent that induces the employment, and the agent is bound to

apply this skill to the conduct of the business. The contract of the plaintiff required him to negotiate the sale, and relieve the defendant from the entire business. This he was bound to do to earn his commission. By the doctrine of the judge, the commission was earned by the defendant's advising and informing the navy department and Morgan that these vessels were for sale, if such information induced Morgan to call upon the defendant and led to the negotiations with him resulting in the sale. By the contract, Stillman was to make the contract. By the charge, if he gave information that enabled the department to make the contract, it was held sufficient. Various authorities are cited as sustaining the principle of the charge. None of these that I have consulted go to that extent.

In *Doty* v. *Miller* (46 Barb., 529) the broker or agent had negotiated a contract which failed in consequence of an alleged defect in the title of his principal. *Glentworth* v. *Luther* (21 Barb., 145) holds that a broker employed to sell real estate without power to convey, has earned his commission by finding an acceptable purchaser ready and willing to enter into a contract upon the stipulated terms with the vendor. This is all that such a broker can do. He has fully complied with his contract. In *Moses* v. *Bierling* (31 N. Y., 463) it was held that a broker was not entitled to his commission unless he had performed his contract. That such contract was performed when he produced a purchaser willing to take the property at a price satisfactory to the principal. That the right to commissions could not be defeated by a prior sale of the property through the agency of another broker, when the principal had covenanted that the first broker should have the exclusive sale of the property. This case, so far from sustaining the charge, is a direct authority against it. Indeed, in no case is a party entitled to the stipulated compensation unless he has performed his contract. If he is prevented from performing by the other party, he is entitled to *pro tanto* commission, so far as he has performed, and to damages for the breach. In some cases this might amount to the entire stipulated compensation, but

not when further time was to be bestowed and further services rendered by the agent. That is this case.

But some of the judges are of opinion that the exceptions taken to raise the question whether there was such evidence given in the case as to require the judge to submit the question to the jury whether the contract did not contemplate the use of corrupt means to induce the government to purchase the vessels, and therefore void, and have arrived at the conclusion that no evidence was given. In this I cannot concur. Although the contract is silent as to the contemplated purchase, this case conclusively shows that the United States government was the only one in view of the parties. It was further shown that the negotiations between these parties were commenced by the inquiry by the defendant of the plaintiff whether he was in good standing with the republican administration at Washington, to which the plaintiff answered in substance that he was, and could through friends get favorably introduced. The defendant said he was a democrat, and intimated that he could not negotiate with them. Upon this state of facts the contract was executed, giving the plaintiff ten per cent commission upon the amount of the sales of the vessels. The case shows that the vessels were expected to be sold for some two or three hundred thousand dollars, thus giving the plaintiff twenty or thirty thousand dollars for negotiating a single bargain.

The inquiry upon this state of facts arises whether this extravagant commission was agreed to be given for the extraordinary skill of the plaintiff in such negotiations, or whether it was to compensate him for bringing to bear upon the administration political influence to induce a purchase of vessels it would not otherwise make, or to purchase upon terms more favorable than it would otherwise purchase of the seller. If to compensate for the former, the contract is lawful. Parties may at their pleasure fix their own price upon their skill, learning, fidelity, or reputation for integrity, to be applied in the service of another. But if for the latter, I think the contract corrupt and plainly contrary to public policy. It is the duty of public officers having authority to

make purchases of supplies for or other contracts on account of government. to be guided solely by their judgment as to what will conduce to and promote the public interest, and in this to include the entire public. Any favors to political partisans in such transactions can only be given at the expense of the entire public, and consequently are against public policy and corrupt. A disposition to extend such favors in the business transactions of the government cannot be too severely censured or promptly checked. It is the prolific mother of the grossest corruption. We have seen in its indulgence a United States senator coolly pocket forty thousand dollars for negotiating a contract with the government for the sale of guns to it. This is but a single instance out of a great number of its exercise.

In the present case no one can suppose that the defendant would have given one-tenth of the proceeds of the sales of the ships for negotiating the bargain, unless he expected by some means, that they would be sold for more than their fair market value. The conversation between the parties plainly points to the means contemplated, namely, political influence and favoritism. I am at a loss to see how any thing in the then situation of the country or the political sentiments of the people, so ably presented in the prevailing opinion, can have any bearing upon the question. Surely, loyalty was not at so low an ebb as to render its encouragement necessary by fat contracts with the government; but, as above remarked, I do not consider the exception taken upon the trial as sufficient to raise this question, and shall not, therefore, discuss it further. For the reasons first stated, that the plaintiff's intestate never negotiated any bargain for the sale of the vessels, and for the error in the charge that this was not necessary to a recovery, but that it was sufficient if he gave information which led to negotiations and a sale by defendant, the judgment should be reversed and a new trial ordered.